# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| TERRANCE PICHON<br>LDOC #119188<br>VS.<br><br>WARDEN BRAZEL | CIVIL ACTION NO. 08-1354<br><br>SECTION P<br>JUDGE JAMES<br>MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Terrance Pichon, a prisoner in the custody of Louisiana's Department of Public Safety and Corrections (LDOC) filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on September 12, 2008. He complained that he was the victim of violence at the hands of a fellow inmate while he was incarcerated at the Union Parish Detention Center (UPDC) in Farmerville, Louisiana. He named Warden Brazel, Major Dams and the inmate who assaulted him as defendants. He seeks punitive and compensatory damages. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

### *Background*

Plaintiff is an inmate in the custody of the LDOC; he is presently incarcerated at the Allen Correctional Center; however, he complains of an incident that occurred while he was incarcerated at the UPDC in Farmerville.

According to plaintiff, he and another inmate were involved in a "verbal altercation" on

April 21, 2008. Another inmate intervened. According to plaintiff, his attacker, Thaddeus Bailey, lifted plaintiff from his feet and slammed him into the concrete floor. This inmate then continued to kick plaintiff about his back, neck, and head for an extended period of time. According to plaintiff, corrections officers did not timely intervene because on-scene security and electronic surveillance were lacking. On April 23, 2008, surveillance cameras were installed. As a result of the attack, plaintiff sustained broken bones in his face and injury to his eyes. He has had facial reconstruction surgery and will need additional surgery to his face and eye.

On April 30, 2008, plaintiff submitted an Administrative Remedies Procedure (ARP) grievance to the Warden at UPDC. According to the grievance, plaintiff and another inmate were fighting when a third inmate intervened. According to the grievance, the assault lasted 7 or 8 minutes before it was broken up by corrections officers. Plaintiff was apparently written-up or charged with a prison disciplinary rule violation as a result of the incident. Plaintiff asked for transfer to Forcht-Wade Corrections Center.

When he received no response to his grievance, plaintiff submitted a Step 2 grievance on June 16, 2008. He again advised that he was engaged in a fight with a fellow inmate when another inmate intervened. According to this grievance, he was beaten and kicked by this inmate for a period of 10 minutes and sustained the injuries previously described.

In a Step 3 grievance dated July 14, 2008, plaintiff took issue with the disciplinary write-up which apparently stated, "... neither inmate besides me initiated any physical contact..."

On October 9 and again on November 26, 2008 plaintiff, who was by that date incarcerated at the Allen Corrections Center, submitted letters complaining that he had not received adequate medical care for his eye injury and was still awaiting further surgery. [rec.

docs. 5-6]

On December 17, 2008, the undersigned completed an initial review and directed plaintiff to amend his complaint to provide more specific information in support of his failure to protect claim. Among other things, plaintiff was directed to "... provide copies of the disciplinary write-up and the results of any disciplinary hearing convened as a result of the incident in question." In addition, he was directed to amend his complaint to demonstrate deliberate indifference on the part of Warden Brazel. Plaintiff was also advised to file a separate civil action with regard to the medical care claims arising at Allen Corrections Center. [rec. doc. 7]

On January 8, 2009, plaintiff amended his complaint to name additional defendants, Major Donnie Dams and Inmate Thaddeus Bailey. He also withdrew his medical care claims. [rec. doc. 9] On January 16, 2009, he filed a second amended complaint. Therein he made the following claims with respect to the three named defendants:

*1. Warden Brazel*

Plaintiff claims that he was incarcerated under conditions that posed a substantial risk of serious harm because UPDC lacked "basic security essentials and basic security tactics." He claimed that at the time of the incident, one security officer was assigned to monitor four tiers; he claims that the Warden should have assigned 2 officers to this task. He also argued that officers make rounds every hour and that since their movements are predictable, inmates can plan mischief accordingly. Plaintiff commends the Warden for having installed alert buttons, but complains that access to the buttons may be impossible for inmates involved in physical altercations. Plaintiff contends that Brazel's deliberate indifference is established by the fact that he installed surveillance cameras throughout the jail 2 days after the incident in question. [rec.

3

doc. 11, pp. 3-4]

*2. Major Donnie Dams*

Plaintiff claims that Major Dams made false allegations in the disciplinary report which charged plaintiff with some disciplinary rules violation. He also claims that Dams conducted an improper investigation and, that he "possibly" witnessed the event yet did not immediately come to plaintiff's assistance. [rec. doc. 11, pp. 5-6]

*3. Inmate Bailey*

Plaintiff claims that inmate Bailey "... grabbed plaintiff, lifted him up, and slammed [him] into the concrete floor... then continued to kick plaintiff about his back, neck, and head for an extended period of time." Plaintiff also claims that Bailey "... had criminal intentions when he assaulted plaintiff..." [rec. doc. 11, p. 6]

*Law and Analysis*

*1. Screening*

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be

4

granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Furthermore, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

The law accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Plaintiff has set forth specific facts which he claims entitles him to relief. He was afforded an opportunity to amend his original complaint to

provide more specific factual support for his claims. He has pleaded his best case and he need not be afforded further opportunities to amend.

## 2. *Failure to Protect*

Plaintiff claims that the Warden Brazel and Major Dams failed to protect him. With regard to Warden Brazel, plaintiff contends that the prison security system was inappropriate and ineffective. With regard to Major Dams, plaintiff "strongly feels" that Dams witnessed the altercation but failed to come to plaintiff's assistance.

The Eighth Amendment imposes a duty on prison officials to "'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). However, the Eighth Amendment mandates 'reasonable' safety, not 'absolute' safety. *See Newton v. Black*, 133 F.3d 301, 307 (5th Cir. 1998). Thus, not "every injury suffered by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan,* 511 U.S. at 834. Rather, a prisoner must demonstrate both that (1) "he is incarcerated under conditions posing a substantial risk of serious harm" and (2) the defendant prison official's state of mind is one of "deliberate indifference" to the prisoner's safety. *Id.*; *Horton v. Cockrell*, 70 F.3d at 401.

The Supreme Court of the United States has determined that the test for "deliberate indifference" is a subjective test: "[A] prison official cannot be found liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*,

511 U.S. at 837.

To the extent that plaintiff faults Warden Brazel for the assault that occurred April 21, 2008, he has failed to allege facts to support the notion that the Warden had either the requisite knowledge of a substantial risk or that he was "deliberately indifferent" to the risk of harm with regard to the assault in question. In order to succeed, the plaintiff must do more than "merely show ... [that the defendant prison] official had the means to correct a constitutional infirmity." *Payne v. Collins*, 986 F.Supp. 1036, 1054 (D.Tex.1997)(citing *Hale v. Tallapoosa County*, 50 F.3d 1579, 1541 (11th Cir.1995); *Doe v. Sullivan County*, 956 F.2d 545, 550 (6th Cir.).

Additionally, in considering whether an Eighth Amendment violation has occurred, Courts must look to whether there was a "substantial" or "pervasive" risk of harm. A "pervasive" risk of harm may not ordinarily be shown by pointing to a single or isolated incident. See e.g. *Falls v. Nesbitt*, 966 F.2d 375, 378 (8th Cir.1992) (holding a "pervasive risk" is something more than a single incident and something less than a riot). Plaintiff cites a single incident in which he was attacked by another inmate. An inmate is unlikely to recover under Section 1983 for injuries sustained in an isolated assault unless he can prove that the authorities either "set him up" for the assault or deliberately ignored his repeated and clearly well-founded claims of danger. There are no allegations that the defendants set plaintiff up for the attack or ignored claims of danger prior to the attack.

Plaintiff has only made a conclusory allegation that the defendants provided insufficient security and that, standing alone, is insufficient. Plaintiff has not alleged a history of violence or threats preceding the assault in question; he has not presented any facts or argument to show that the defendants knew or should have known that an attack on his person was immanent.

7

Similarly, plaintiff's argument that the defendants failed to adequately respond to the attack is inadequate to state a constitutional claim. Plaintiff claims that the injuries he sustained happened once he was thrown to floor and kicked repeatedly . He implies that, had the defendants responded faster, those injuries would have been prevented. Again, he makes a conclusory allegation. He alleges that it took "several minutes" for prison guards to respond to the attack. Still, nothing in either the original or amended complaints suggest that the defendants were guilty of wanton conduct amounting to deliberate indifference. While plaintiff "strongly feels" that Major Dam was present during the assault, such "feelings" are insufficient. There are simply no credible allegations that the defendants intentionally or wantonly waited a few minutes to respond to the attack.

Based on the facts alleged, plaintiff could, at best, establish negligence on the part of the defendants and that is insufficient since "[t]he negligent deprivation of life, liberty or property is not a constitutional violation." *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir.1995). Petitioner's failure to protect claim should be dismissed as frivolous.

### 3. *Disciplinary Proceedings*

In his amended complaint, plaintiff complains that Major Dams falsified documents and conducted an improper investigation. However, plaintiff does not allege how these acts violated plaintiff's constitutional rights. To the extent that plaintiff implies that these acts resulted in his wrongful conviction for a disciplinary rules violation, he fails to state a claim for which relief might be granted.

Plaintiff did not provide the results of the disciplinary proceeding and therefore, it is impossible to determine the exact punishment that was ordered. To the extent that plaintiff lost

"good time" credits as a result of the allegedly improper disciplinary proceeding, he fails to state a viable claim. Prisoners cannot bring a civil rights action pursuant to §1983 action seeking damages based upon irregularities in a prison disciplinary proceeding that resulted in the forfeiture of "good time" credits, until the offending disciplinary conviction has been reversed on direct appeal, expunged by executive order, or otherwise declared invalid in a state collateral proceeding or by the issuance of a federal writ of *habeas corpus*, if a favorable judgment in the civil rights action would necessarily imply the invalidity of the disciplinary conviction at issue. *Clarke*, 154 F.3d at 189; see also *Edwards v. Balisok*, 520 U.S. 641, 644, 117 S.Ct. 1584, 1587 (1997) (citing *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364 (1994)). Plaintiff has not made the requisite showing. Thus, to the extent that plaintiff asserts a violation of due process resulting in the loss of "good time" credits, he fails to state a claim for which relief may be granted.

To the extent that plaintiff suffered penalties short of the loss of "good time" credits, his implied due process claim fares no better. By virtue of a valid criminal conviction and subsequent legal confinement, a prisoner loses his expectation of liberty. See *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Nevertheless, plaintiff implies that he suffered some loss of liberty because of the false reports authored by Major Dams. This allegation, taken as true for the purposes of this report, fails to state a claim for which relief might be granted pursuant to 42 U.S.C. §1983 because "[t]he Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin v. Conner*, 515 U.S. 472, 478, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The federal jurisprudence holds, that while the states may under certain circumstances create rights that implicate Due Process, such rights are limited to freedom from restraints that impose

9

"atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

In other words, when a prisoner is lawfully incarcerated, he loses many of the rights and privileges that most citizens enjoy. *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir.1997). Thus, to the extent that plaintiff lost privileges, but not "good time" credits as a result of the complained of investigation conducted by Major Dam, he fails to state a claim for which relief might be granted.

*4. State Actor*

Finally, plaintiff seeks to visit §1983 liability upon his assailant, a fellow inmate. Section 1983 prescribes redress for conduct by any person who, under color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. See 42 U.S.C. § 1983. Thus, a plaintiff in a civil rights suit must show that the conduct of which he is complaining was committed by a person <u>acting under color of state law</u>. Plaintiff has not alleged any action that would give rise to his fellow inmate being classified as a state actor. Since plaintiff is not complaining of any civil rights violations committed by a "state actor," his claim against inmate Bailey lacks an arguable basis in law, and should be dismissed with prejudice as frivolous.

*5. Conclusion and Recommendation*

Based on the foregoing,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, February 27, 2009.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE